# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

SUSAN ELAINE COUNTS, )
)
       Plaintiff, )
)
v. ) Case No. CIV-16-366-SPS
)
NANCY A. BERRYHILL, )
Acting Commissioner of the Social )
Security Administration,[1] )
)
)
       Defendant. )

## OPINION AND ORDER

The claimant Susan Elaine Counts requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the Commissioner's decision is hereby REVERSED and REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on November 21, 1959, and was fifty-five years old at the time of the most recent administrative hearing (Tr. 75). She has a high school education, and has worked as a shipping and receiving clerk, sales clerk, and insurance policy clerk (Tr. 88-89, 288). The claimant alleges she has been unable to work since August 3, 2010, due to problems with her knees, back pain, neck pain, depression, anxiety, panic attacks, and high blood pressure (Tr. 241, 287).

**Procedural History**

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, on February 6, 2012 (241-42). Her application was denied. ALJ Richard J. Kallsnick conducted an administrative hearing and found that the claimant was not disabled in a written opinion dated April 17, 2013 (Tr. 112-24). The Appeals Council remanded the case on June 13, 2014 (Tr. 131-33). On remand, ALJ Richard J. Kallsnick conducted another administrative hearing and again found that the claimant was not disabled in a written decision dated January 22, 2015 (Tr. 11-20). The Appeals Council denied review, so the ALJ's January 2015 written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at steps four and five of the sequential evaluation. He found that the claimant retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with occasional stooping and climbing ramps, and never crawling, kneeling, and climbing ladders, ropes, or scaffolds (Tr. 16). Additionally, the ALJ found the claimant had the non-exertional limitations of performing simple and some complex tasks, dealing with the public occasionally, and relating to coworkers on a superficial work basis (Tr. 16). The ALJ then concluded that the claimant was not disabled because she could return to her past relevant work as an insurance clerk, or alternatively, because there was work she could perform in the national economy, *i. e.*, data entry clerk, receptionist, and document preparer (Tr. 18-19).

## Review

The claimant contends that the ALJ erred by failing to properly: (i) account for the opinion of consultative examiner Beth Jeffries, Ph.D., (ii) account for her obesity and neck impairment, and (iii) analyze her credibility. The Court agrees with the claimant's first contention, and the Commissioner's decision should therefore be reversed and remanded for further proceedings.

The ALJ determined that the claimant had the severe impairments of history of left knee arthroscopy with abrasion chondroplasty of the patella, osteoarthritis of the left knee, bilateral L4-L5 spinal fusion, depression, and panic disorder without agoraphobia (Tr. 13). The relevant medical evidence in the record indicates that the claimant fell at work in May 2010 and sustained injuries to her knees and back (Tr. 409-13). As to her

left knee, she underwent an arthroscopy with abrasion chondroplasty of the patella and partial synovectomies in February 2011; steroid injections in August 2012; hyaluronic injections in December 2012; and a left knee replacement in July 2013 (Tr. 355-57, 610-11, 617-21, 623-24, 634-35, 663-64, 672-73). As to her right knee, she had steroid injections in August 2012, and underwent an arthroscopy and partial medial meniscectomy in April 2013 (Tr. 610-11, 617-18, 623-24, 666-67). In October 2012, she underwent a decompression and fusion of her lumbar spine at L4-L5 (Tr. 613-14).

On August 6, 2014, Dr. Beau Jennings conducted a physical consultative examination of the claimant and completed a Medical Source Statement ("MSS") concerning her ability to do physical work-related activities (Tr. 689-99). He opined that the claimant could continuously lift/carry up to ten pounds, and occasionally lift/carry eleven to twenty pounds; sit for four hours at a time; stand for two hours at a time for three hours total in an eight-hour workday; and walk one hour at a time for three hours total in an eight-hour workday (Tr. 689-99). As to postural activities, Dr. Jennings stated the claimant could continuously balance; occasionally climb stairs and ramps, stoop, and kneel; and could never climb ladders or scaffolds, crouch, or crawl (Tr. 692). Dr. Jennings also found the claimant could tolerate continuous exposure to unprotected heights, moving mechanical parts, operating a vehicle, humidity, wetness, dust, odors, fumes, and pulmonary irritants; frequent exposure to vibrations; and occasional exposure to extreme cold and extreme heat (Tr. 693).

As to the claimant's mental impairments, treatment notes from Dr. Keith Jesiolowski, the claimant's family physician, reflect that he treated the claimant for anxiety and depression from March 2009 through February 2014 (Tr. 425-87, 674-82).

On March 17, 2012, Dr. Beth Jeffries conducted a consultative mental status examination of the claimant and assessed her with panic disorder without agoraphobia and alcohol abuse (Tr. 545-49). In her "Prognosis and Recommendation," Dr. Jeffries stated that the claimant's appearance and behaviors were consistent with her symptoms, her overall prognosis was good, her overall adjustment to stress was fair, and that she was unlikely to decompensate with continued stress (Tr. 547). Additionally, Dr. Jeffries opined that the claimant had the ability to concentrate over an eight-hour workday and forty-hour workweek; suffered from a substantial disorder of mood that impaired her ability to meet the demands of daily life, which could improve with abstinence from alcohol and counseling; could understand both simple and complex instructions; could adapt, persist, and keep pace in a work setting with low stress conditions; and had the ability to interact with the public, coworkers, and supervisors (Tr. 548).

On April 26, 2012, a state reviewing physician found that the claimant was mildly limited in her activities of daily living and in her ability to maintain concentration, persistence, or pace, and moderately limited in her ability to maintain social functioning (Tr. 580-594). She also completed a mental RFC form, indicating that the claimant was moderately limited in her ability to understand, remember, and carry out detailed instructions, and to interact appropriately with the general public (Tr. 576-79). She then concluded that the claimant could perform simple and some complex tasks, relate to

others on a superficial work basis, interact with the public on a limited basis, adapt to a work situation, and carry out normal activities of daily living (Tr. 578).

In his written opinion, the ALJ summarized the claimant's hearing testimony and some of the medical evidence in the record. The ALJ gave great weight to Dr. Jennings' consultative examination assessment, noting there were no limitations given for her neck, and the fact that her surgeons released her from their care lent support to his opinions (Tr. 18). Likewise, the ALJ accorded great weight to Dr. Jeffries' mental status examination, noting her opinion was the only insight into the claimant's mental health because there were no mental health treatment notes (Tr. 18). The ALJ then accorded significant weight to the state agency reviewing physician opinions, but found the claimant was more restricted in her postural activities due to her pain (Tr. 18).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors are: (i) the length of treatment relationship and frequency of examination; (ii) nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the

area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Here, the ALJ purported to assign great weight to Dr. Jeffries' opinion, but failed to account for her finding that the claimant needed, *inter alia*, a low-stress work environment. As such, the ALJ rejected (by failing to discuss) some of the limitations applicable to the claimant, including the need for a low stress environment, but failed to provide an explanation for this rejection. This is significant because it implicates the claimant's ability to maintain proper pace. *See, e. g., Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."), *citing Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) *and Hamlin*, 365 F.3d at 1219. *See also Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") [citation omitted]. Indeed, "the ALJ's RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013), *quoting* Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). But here, the ALJ failed to connect the claimant's severe impairments of depression and panic disorder without agoraphobia to his RFC assessment, and further failed to consider all her impairments in combination. *See*

*Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five.") [unpublished opinion]; *see also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.") [unpublished opinion].

Because the ALJ failed to properly assess the evidence in determining the claimant's RFC, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis of the claimant's RFC. If on remand there is any adjustment to the claimant's mental RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The Court hereby FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly REVERSED and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 27th day of February, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**